IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMOND HAYNES, #S07277,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 23-cv-03512-SMY |
| | ) |
| **ANTHONY WILLS,** | ) |
| **JOSHUA A. SCHOENBECK,** | ) |
| **ANTHONY JONES,** | ) |
| **KRISTA ALLSUP,** | ) |
| **SARA McCLURE,** | ) |
| **ROB JEFFREYS,** | ) |
| **and MARGARET MADOLE,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Demond Haynes, an inmate in the Illinois Department of Corrections and currently incarcerated at Menard Correctional Center, filed this civil rights action under 42 U.S.C. § 1983 for alleged constitutional deprivations stemming from his punishment for 2 false disciplinary tickets. (Doc. 1, pp. 1-63). He seeks declaratory, monetary, and injunctive relief. *Id*. at 26-27. This matter is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *See* 28 U.S.C. § 1915A(a)-(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 3-26): Plaintiff received 2 disciplinary tickets for possession of contraband and/or drugs at Menard, after an unidentified legal mail officer opened his incoming mail and noticed several court documents

1

stained with an unknown substance on November 4 and November 8, 2021. Both times, the officer explained that he would have the documents tested for the presence of drugs and return them if the results were negative. Instead, Plaintiff received 2 separate tickets for dangerous contraband and/or drugs and drug paraphernalia. The tickets indicated the documents were tested using a Sirchie NARK II test kit and immediately yielded positive results for synthetic cannabinoids.

Plaintiff was taken from the general population to segregation within an hour of the first incident. Menard's Adjustment Committee found him guilty of both tickets following 2 separate hearings in November 2021. Each time, he received one month of revoked good conduct credit and six months of segregation, no contact visits, and no commissary. *Id*. at 28, 31.

Plaintiff filed several grievances to address the matter in November 2021, December 2021, March 2022, and April 2022. He complained that Sirchie NARK II tests are known to produce false positive results, and requested a new test and expungement of both tickets. He also requested return of his legal documents because he needed them for his pending cases. Because the grievances were not answered at the institutional level, Plaintiff forwarded them to the Administrative Review Board (ARB), which rejected them for lack of an institutional response. Meanwhile, the delays in retrieving his legal documents resulted in missed deadlines and continuances in a pending court case. Plaintiff filed a motion to compel the prison to return his legal documents on January 5, 2022. However, his motion was ignored and his case dismissed.

After spending more than five months in segregation, Yvette Baker finally responded to a grievance indicating that IDR 202101492/1-MEN and 202101511/1-MEN ISP yielded *negative* results for drugs. Baker stated that the Adjustment Committee was notified, and Plaintiff was informed that both IDRs would be expunged. In light of this, the pending grievance was deemed moot, after Baker noted that "this office cannot award monetary compensation" for the error. *Id*.

2

at 7. Plaintiff received the grievance response without any of his legal documents attached.

Four days after the grievance response was signed on April 21, 2022, Plaintiff was finally released from segregation. He filed another grievance to complain that the "warden" signed the grievance report and thereby acknowledged the negative drug test results on April 21, 2022, but allowed him to languish in segregation until April 25, 2022.

Plaintiff was then sent to the East Cellhouse based on an aggression level of 5, instead of the West Cellhouse based on a lower aggression level. He informed his counselor that this was incorrect because his only disciplinary tickets were ordered expunged. She agreed to look into the matter, but later sent Plaintiff a note saying that his aggression level was 11 (moderate).

Krista Allsup became Plaintiff's counselor in June 2021,[1] after he broke his wrist and transferred to the health care unit. He informed the counselor that his aggression level spiked following issuance of the disciplinary tickets, and that he was placed in an aggressive housing unit as a result. The expungement of both tickets warranted the corresponding reduction of his aggression level, however, so Plaintiff asked Allsup to correct it. After investigating the matter, Allsup issued a written response stating that the tickets still stood and his aggression level was 11 (moderate).

On October 31, 2022, Plaintiff's counselor asked him to sign a form acknowledging that his aggression level was raised from medium to maximum. When Plaintiff requested an explanation, the counselor indicated that the 2 tickets for drugs still stood. He filed a grievance to request expungement of both tickets, restoration of his original aggression level, transfer to West Cellhouse, and access to mental health treatment.

Plaintiff was instead placed in segregation. From November 4 until November 13, 2022,

---

[1] The year appears to be incorrectly listed as 2021 in the Complaint, when the chronology of events suggest that it should be 2022. (Doc. 1, p. 8).

3

he was given no sheets, blankets, pillows, or pillowcases. For 9 days, he slept on a bare mattress in frigid temperatures and rested his head on a roll of toilet paper. His cell had a filthy toilet and a grimy sink. He held his bowel movements for 3 days, while waiting for cleaning supplies. Plaintiff eventually used his own sock to clean the commode. He was allowed no showers, no change of underclothes, and no towels. Plaintiff complained about these conditions to every officer assigned to his gallery.

The conditions caused Plaintiff to suffer injuries including neck pain and a rash. He submitted sick call requests for treatment of his neck pain and was treated with prescription pain medication on November 8, 2022. He submitted a second sick call request for treatment of a rash with pustules that broke out on his right upper forearm after sleeping on a bare mattress. He was given prescription ointment on November 11, 2022.

### Preliminary Dismissals

Plaintiff mentions Yvette Baker, a warden, and various officers in the statement of his claim, but he does not identify any of them as defendants in the Complaint. Consequently, the Court will not treat these individuals as parties; all claims against them are dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties").

Plaintiff names Rob Jeffreys and Margaret Madole as defendants in the Complaint but makes no allegations against them. Merely invoking the name of a potential defendant is not enough to state a claim. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). These defendants cannot be said to have notice of which claims, if any, are directed against them. FED. R. CIV. P. 8(a)(2). Therefore, Defendants Jeffreys and Madole will be dismissed from this action without prejudice.

**Discussion**

Based on Plaintiff's allegations, the Court designates the following claims in the *pro se* Complaint:

Count 1: Sara McClure, Joshua Schoenbeck, Anthony Jones, and Anthony Wills refused to expunge Plaintiff's disciplinary tickets even after receiving Yvette Baker's report indicating that both tickets should be expunged based on negative drug test results, in violation of Plaintiff's rights under the Eighth or Fourteenth Amendment (Doc. 1, ¶¶ 74, 76, 78, 86).

Count 2: Krista Allsup and Anthony Wills failed to correct Plaintiff's aggression level, cellhouse placement, and classification, even after receiving Yvette Baker's report indicating that both tickets should be expunged based on negative drug test results, in violation of Plaintiff's rights under the Eighth or Fourteenth Amendment (Doc. 1, ¶¶ 75, 88).

Count 3: Joshua Schoenbeck, Anthony Jones, and Anthony Wills deprived Plaintiff of a protected liberty interest without due process of law when they relied on a Sirchie NARK II test, known to produce false positives, when finding Plaintiff guilty of drugs and punishing him with one month of revoked good conduct credit and six months of segregation, no contact visits, and no commissary, in violation of his rights under the Fourteenth Amendment (Doc. 1, ¶¶ 77, 79, 87).

Count 4: Anthony Wills subjected Plaintiff to unconstitutional conditions of confinement in segregation, in violation of the Eighth Amendment (Doc. 1, ¶¶ 80-84).

Count 5: Anthony Wills interfered with Plaintiff's access to the courts by allowing prison officials to confiscate his legal papers and causing one pending case to be dismissed, in violation of his constitutional rights (Doc. 1, ¶ 85).

**Any other claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.[2]**

**Counts 1, 2, and 3**

The Fourteenth Amendment guards against deprivations of constitutionally protected interests in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

113, 125 (1990). A due process claim arises in the prison disciplinary hearing context when: (1) there was a protected interest at stake that necessitated due process protections; and (2) the disciplinary hearing was conducted in accordance with procedural due process requirements. *Id*.

To determine whether a protected liberty interest was at stake, courts consider the duration of confinement in segregation and the conditions an inmate faced there. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For shorter periods of confinement, courts typically find no protected liberty interest and end the inquiry there. For longer terms of confinement, the Court also considers whether the plaintiff endured an "atypical and significant hardship" by examining the conditions faced in segregation. *See Beamon v. Pollard,* 711 F. App'x 794, 795 (7th Cir. 2018) (135 days in segregation does not implicate the Fourteenth Amendment). *But see Marion v. Columbia Corr. Inst.*, 559 F.3d 693 (7th Cir. 2009) (240 days sufficiently long to implicate a Fourteenth Amendment protected liberty interest and trigger the need for further inquiry into the conditions).

Plaintiff was originally punished with one year in segregation that began November 4, 2021, and ended after approximately 170 days on April 25, 2022. The time spent in segregation is relatively short in this context, and Plaintiff does not describe any adverse conditions he faced there. His loss of privileges, including contact visits and commissary, adds nothing to this claim. *See Thomas v. Ramos,* 130 F.3d at 762, n.8 (loss of commissary, phone, contact visits, program participation, and demotion to C-grade does not implicate a protected liberty interest). That said, two significant facts set this claim apart.

First, Plaintiff alleges he endured 170 days of punishment *before* his disciplinary tickets were ordered expunged. Due process is satisfied if an inmate spends little or no time in unnecessary segregation before his administrative appeal corrects the flawed disciplinary record. *Morisette v. Peters*, 45 F.3d 1119, 1121-22 (7th Cir. 1995). However, an "administrative appeal

must correct the procedural error *before* the punishment begins." *Id*. at 1122 at n.4 (emphasis added). *See also Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021). Plaintiff allegedly endured 5½ months of unnecessary punishment in segregation and still more when his aggression level, housing, and classification were not corrected following his release from segregation. On this basis, Counts 1, 2, and 3 state a viable claim and will be allowed to proceed.

Second, Plaintiff was punished with one month of revoked good conduct credit for each ticket, and it is unclear whether the punishment still stands. If it does, Plaintiff's claims in this case may be barred by *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994). According to *Heck*, a prisoner cannot bring a civil rights claim stemming from unfair disciplinary action that resulted in the loss of good conduct credit until the disciplinary "conviction" has been invalidated or expunged.[3] *Id*. at 486-87. This may require Plaintiff to take additional steps, such as filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 in federal court, before pursuing his claims under § 1983 *Edwards v. Balisok,* 520 U.S. 641, 649 (1997).

Because the Court is unable to discern where his punishment stands, Plaintiff may proceed with Counts 1, 2, and 3 against those defendants named in connection with each claim.

### Count 4

The Eighth Amendment protects prisoners against conditions that deprive them from the "minimal civilized measure of life's necessities," including adequate shelter. *Farmer v. Brennan*,

---

[3] The United States Supreme Court explains that a disciplinary action is the equivalent of a conviction and adds the following:

> [I]n order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."

*Heck*, 512 U.S. at 486-87.

511 U.S. 825, 833-34 (1994).  In order to articulate a claim for unconstitutional conditions, the plaintiff must describe a sufficiently serious deprivation (objective standard) and a defendant's deliberate indifference (subjective standard) to the conditions.  *Id*.

According to the allegations, Plaintiff was denied constitutionally adequate housing from November 4-13, 2022, when he was placed in a filthy cell with no bedding, blankets, or cleaning supplies and also denied showers, towels, and a change of underclothes.  He suffered injuries that included neck pain and a rash that necessitated prescription medication to treat.

Certain conditions do not violate the Eighth Amendment in isolation but may do so in combination.  *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citing low nighttime cell temperature plus a failure to issue blankets).  In this case, the combination of cold temperatures and no bedding resulted in neck pain that necessitated treatment with prescription pain relievers.  The combination of a dirty cell, no cleaning supplies, no change of underclothes, and no shower access caused a rash that necessitated treatment with prescription ointment.  These conditions, in combination, are sufficiently serious to support an Eighth Amendment claim at this stage.

However, Plaintiff's allegations do not suggest deliberate indifference by a named defendant.  Warden Wills is the only person he identifies in connection with this claim, but he makes no allegations suggesting the warden knew about the conditions or responded to them with deliberate indifference.  A high-ranking official cannot be liable under § 1983, unless he was actually involved in the constitutional deprivation because "[l]iability under § 1983 is direct rather than vicarious." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) "That means that the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (internal quotation marks and citation omitted).

Because Plaintiff's allegations do not indicate that Warden Wills knew of, approved, condoned, or turned a blind eye to the conditions, Count 4 will be dismissed without prejudice for failure to state a claim against the warden.

**Count 5**

An inmate also has a Fourteenth Amendment right of access to the courts. *Turner v. Safley*, 482 U.S. 78, 89 (1987). To state a claim for the denial of court access, a plaintiff must allege that the defendant denied him access to legal materials and the action impeded his ability to pursue a particular lawsuit. *See Walters v. Edgar,* 163 F.3d 430, 433–34 (7th Cir. 1998) (citing *Lewis v. Casey,* 518 U.S. 343 (1996) (claim for interference with court access required the plaintiff to show that he suffered an injury over and above the denial of legal materials)). As is true with all other § 1983 claims, the plaintiff must name a defendant who was personally involved in or responsible for the deprivation.

Here, Warden Wills is the only defendant named, and the allegations do not explain how the warden interfered in a manner that caused a particular lawsuit to be dismissed. Count 5 will therefore be dismissed for failure to state a claim against Warden Wills.

**Request for Preliminary Injunction**

Plaintiff seeks a preliminary injunction to prevent retaliation by the warden. He claims he fears retaliation by the warden for filing this lawsuit, but he cites no instances of actual retaliation. He also seeks an order prohibiting punishment with segregation based on Sirchie NARK II test results, which he describes as unreliable. Both requests for interim injunctive relief are denied. Plaintiff's fear of retaliation and claim of unreliable test results are merely speculative at this point. He offers no examples, data, or other facts suggesting otherwise. The Court declines to enter an

order for interim injunctive relief based on either request. However, Plaintiff's request for permanent injunctive relief remains, and the Court will address it at the conclusion of this case.

### Disposition

The Complaint survives screening pursuant to 28 U.S.C. § 1915A and proceeds, as follows:

- **COUNT 1** will receive further review against **SARA McCLURE, JOSHUA SCHOENBECK, ANTHONY JONES,** and **ANTHONY WILLS**, in their individual capacities only.

- **COUNT 2** will receive further review against **KRISTA ALLSUP** and **ANTHONY WILLS**, in their individual capacities only.

- **COUNT 3** will receive further review against **JOSHUA SCHOENBECK, ANTHONY JONES,** and **ANTHONY WILLS**, in their individual capacities only.

- **ANTHONY WILLS** will remain named as a defendant in his official capacity based on the request for permanent injunctive relief.

However, **COUNTS 4** and **5** are **DISMISSED** without prejudice against **ANTHONY WILLS** for failure to state a claim. **ALL OTHER CLAIMS** and **DEFENDANTS** are **DISMISSED** without prejudice. The Clerk's Office is **DIRECTED** to **TERMINATE ROB JEFFREYS** and **MARGARET MODULE** as defendants in CM/ECF.

For Counts 1, 2, and 3, the Clerk shall prepare for Defendants **SARA McCLURE, JOSHUA SCHOENBECK, ANTHONY JONES, KRISTA ALLSUP,** and **ANTHONY WILLS** (individual and official capacities): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the

extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply. 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs.  Failure to comply with this order may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to TERMINATE Defendants ROB JEFFREYS and MARGARET MODULE as parties in CM/ECF.**

IT IS SO ORDERED.

DATED:   May 24, 2024                    *s/ Staci M. Yandle*
                                         **STACI M. YANDLE**
                                         **United States District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.