**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DEMOND HAYNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:23-CV-3512-MAB |
| | ) | |
| ANTHONY WILLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is before the Court on Plaintiff Demond Haynes' Motion for Leave to Amend (Doc. 35) and Defendants Anthony Wills, Joshua Schoenbeck, Sarah Foutch (formerly known as Sara McClure), Anthony Jones, and Krista Allsup's Motion for Summary Judgment on the Issue of Exhaustion (Doc. 38). For the reasons set forth below, Plaintiff's Motion for Leave to Amend is GRANTED (Doc. 35) and Defendants' Motion for Summary Judgment on the Issue of Exhaustion is DENIED as MOOT (Doc. 38).

1. *Background and Procedural History*

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights during his incarceration at Menard Correctional Center (Menard) (*see* Docs. 1, 12). In his original Complaint, Plaintiff alleges that he received two disciplinary tickets at Menard for possession of contraband and/or drugs after an unidentified officer opened his incoming mail, observed it was stained with an unknown substance, and then had that mail tested for the presence of drugs (Doc. 12 at pp. 1-2). Plaintiff received two tickets for contraband and/or drugs, which indicated the

documents were tested using a Sirchie NARK II test kit and immediately yielded positive results for synthetic cannabinoids (*Id.* at p. 2). Plaintiff was removed from general population and taken to segregation within an hour of the first incident (*Id.*).

From November 4 until November 13, 2021,[1] Plaintiff was left in segregation with no sheets, blankets, pillows, or pillowcases (*Id.* at pp. 3-4). For 9 days he slept on a bare mattress in frigid temperatures (*Id.* at p. 4). He was forced to hold his bowel movements for 3 days because the toilet and sink in his segregation cell were filthy (*Id.*). Plaintiff constantly complained about the condition of his cell and requested cleaning supplies, but the officers assigned to his gallery provided no aid (*Id.*). As a result, Plaintiff was forced to use his own sock to clean the toilet (*Id.*). In addition, Plaintiff suffered injuries including neck pain and a rash due to the deplorable conditions (*Id.*).

Meanwhile, Menard's Adjustment Committee found Plaintiff guilty of both tickets (*Id.* at p. 2). Each time, Plaintiff received one month of revoked good conduct credit and six months of segregation, no contact visits, and no commissary (*Id.*). Consequently, Plaintiff filed numerous grievances in November 2021, December 2021, March 2022, and April 2022 (*Id.*). In those grievances, Plaintiff challenged the Sirchie NARK II test's accuracy and results, requested a new test and expungement of both tickets, and sought the return of his confiscated legal documents (*Id.*).

---

[1] In the Court's Merit Review Order of Plaintiff's original Complaint, the Court interpreted Plaintiff's conditions of confinement claim as arising for the period from November 4, 2022, to November 13, 2022 (*see* Doc. 12 at p. 3, fn. 1). As will be discussed later, the contents of Plaintiff's proposed Amended Complaint make it clear that Plaintiff was asserting that these conditions occurred between November 4, *2021*, and November 13, *2021* (*see generally* Doc. 35).

After spending more than five months in segregation, Grievance Officer Yvette

Baker responded to one of Plaintiff's grievances and indicated that IDR 202101492/1-

MEN and 202101511/1-MEN ISP yielded *negative* results for drugs (*Id.*; *see also* Doc. 1 at

p. 51). Baker wrote, "[t]his office contacted INTEL/IA for IDRs 202101492/1-MEN and

202101511/1-MEN[.] ISP results yielded negative result. IDR's expunged, Adjustment

committee notified. restoration of grade status restored. This office cannot award

monetary compensation." (Doc. 1 at p. 51). As a result, Baker recommended Plaintiff's

grievance be found moot and the Warden concurred in that recommendation (Doc. 12 at

pp. 2-3).

Plaintiff was released from segregation on April 25, 2022, four days after the

Warden concurred in the Grievance Officer's recommendation (*Id.* at p. 3). However,

Plaintiff was sent to a different cellhouse that housed inmates with higher aggression

levels because Plaintiff's aggression level had been raised due to the two disciplinary

tickets (*Id.*). Plaintiff contacted his counselor, Defendant Allsup, because he believed his

higher aggression level was incorrect since his disciplinary tickets had been expunged

(*Id.*). Defendant Allsup investigated the matter further and issued a written response

which stated that she had called the Adjustment Committee and looked on Disciplinary

Tracking, but "both say that you have not had any tickets expunged since before 2020,

therefore your aggression level is correct." (*Id.*; *see also* Doc. 1 at p. 45).

Plaintiff filed his original Complaint on October 27, 2023 (Doc. 1). The Court

conducted a preliminary review of Plaintiff's original Complaint pursuant to 28 U.S.C. §

1915A in May 2024 (Doc. 12). The Court's Merits Review Order designated the following

claims based upon Plaintiff's *pro se* Complaint:

Count 1:    [Sarah Foutch (formerly known as Sara McClure)], Joshua Schoenbeck, Anthony Jones, and Anthony Wills refused to expunge Plaintiff's disciplinary tickets even after receiving Yvette Baker's report indicating that both tickets should be expunged based on negative drug test results, in violation of Plaintiff's rights under the Eighth or Fourteenth Amendment (Doc. 1, ¶¶ 74, 76, 78, 86).

Count 2:    Krista Allsup and Anthony Wills failed to correct Plaintiff's aggression level, cellhouse placement, and classification, even after receiving Yvette Baker's report indicating that both tickets should be expunged based on negative drug test results, in violation of Plaintiff's rights under the Eighth or Fourteenth Amendment (Doc. 1, ¶¶ 75, 88).

Count 3:    Joshua Schoenbeck, Anthony Jones, and Anthony Wills deprived Plaintiff of a protected liberty interest without due process of law when they relied on a Sirchie NARK II test, known to produce false positives, when finding Plaintiff guilty of drugs and punishing him with one month of revoked good conduct credit and six months of segregation, no contact visits, and no commissary, in violation of his rights under the Fourteenth Amendment (Doc. 1, ¶¶ 77, 79, 87).

Count 4:    Anthony Wills subjected Plaintiff to unconstitutional conditions of confinement in segregation, in violation of the Eighth Amendment (Doc. 1, ¶¶ 80-84).

Count 5:    Anthony Wills interfered with Plaintiff's access to the courts by allowing prison officials to confiscate his legal papers and causing one pending case to be dismissed, in violation of his constitutional rights.

(Doc. 12 at p. 5).[2] Notably, the Court's Merit Review Order permitted Plaintiff to proceed

on Counts 1, 2, and 3 (*Id.* at pp. 5-7). Conversely, Counts 4 and 5 were dismissed without

prejudice for the failure to state a claim against the named Defendants (*Id.* at pp. 7-9). To

be precise, the Court's Merit Review Order found that Count 4 alleged conditions that,

when viewed in combination, were "sufficiently serious to support an Eighth

Amendment claim at this stage." (*Id.* at p. 12). Nevertheless, the Court dismissed Count

4 because it had only been raised against Defendant Wills (the Warden at Menard), and

it did not allege Defendant Wills knew of Plaintiff's cell conditions (*Id.* at pp. 8-9).

Similarly, Plaintiff's access to the courts claim raised in Count 5 was dismissed because it

failed to allege how Defendant Wills "interfered in a manner that caused a particular

lawsuit to be dismissed." (*Id.* at p. 9).

The Initial Scheduling Order set a deadline of January 2, 2025, for Plaintiff to file a

Motion to Amend, and a deadline of January 31, 2025, for Defendants to file motions for

summary judgment on the issue of exhaustion of administrative remedies (*see* Doc. 31).

On December 20, 2024, Plaintiff timely filed a Motion for Leave to Amend, which

included his Proposed Amended Complaint (Doc. 35).[3] Defendants did not file a response

to Plaintiff's Motion for Leave to Amend.

---

[2] The Merit Review Order was issued by U.S. District Judge Staci Yandle (See Doc. 12). This case was subsequently transferred to the undersigned, as presiding judge, upon consent of the parties (See Doc. 30).
[3] Plaintiff's Proposed Amended Complaint is attached to his Motion for Leave to Amend (*see* Doc. 35 at pp. 3-26). Notably, however, Plaintiff appears to have attached his Proposed Amended Complaint to his Motion in reverse order, such that page 26 of Doc. 35 is actually the first page of Plaintiff's Proposed Amended Complaint, and page 3 of Doc. 35 is the final page of his Proposed Amended Complaint. The instant Order cites to the specific pages of the Proposed Amended Complaint as they were filed on CM/ECF (e.g., Count 3 of Plaintiff's Proposed Amended Complaint will be cited to as Doc. 35 at p. 12, even though it would otherwise be found at a later page number had Plaintiff's Proposed Amended Complaint

Thereafter, Defendants filed a Motion for Summary Judgment on the Issue of Exhaustion on March 3, 2025 (Doc. 38). Several months later, Plaintiff filed a motion which stated that he had not received a copy of Defendants' Motion for Summary Judgment on the Issue of Exhaustion or related Notice (Doc. 40; *see also* Docs. 38, 39). Accordingly, the Court sent Plaintiff a copy of those documents and granted Plaintiff an extension of time to respond to Defendants' motion (Doc. 41). However, the extended deadline for Plaintiff to respond to Defendants' motion has since passed without any response having been filed by Plaintiff (*see Id.*).

2. *Plaintiff's Motion for Leave to Amend (Doc. 35)*

   a. *Standards for Leave to Amend and Rule 15*

Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires." In interpreting Rule 15(a), the Supreme Court of the United States has explained that Rule 15(a)'s "mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, district courts can deny leave to amend without abusing their discretion "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the ***amendment would be futile***[.]" *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (emphasis added). "In the Seventh Circuit, dismissals under Fed. R. P. 12(b)(6) and § 1915A share the same standard" and "[a] Court may deny a motion to amend where it

---

been filed in the correct order). Nevertheless, as will be explained below, Plaintiff will be required to re-file his Proposed Amended Complaint in the correct page order to minimize unnecessary confusion.

would not survive a motion to dismiss." *Butler v. Anthony*, 13-CV-01285-MJR-SCW, 2014

WL 13133659, at *1 (S.D. Ill. Sept. 25, 2014).

Additionally, when it comes to complaints filed by *pro se* litigants, "district courts

have a special responsibility to construe *pro se* complaints liberally and to allow ample

opportunity for amending the complaint when it appears that by so doing the *pro*

*se* litigant would be able to state a meritorious claim." *Kiebala v. Boris*, 928 F.3d 680, 684

(7th Cir. 2019) (quoting *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir.

1996)). *See also Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) ("[T]he Supreme Court

reaffirmed that '[a] document filed *pro se* is to be liberally construed, . . . and a *pro se*

complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

"The decision to grant or deny a motion to file an amended pleading is a matter purely

within the sound discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d

870, 875 (7th Cir. 2011) (citation omitted).

      b.   <u>Analysis</u>

Plaintiff seeks leave to amend his Complaint so he may raise additional claims and

Defendants (Doc. 35 at pp. 1-2). Tellingly, Defendants have not filed any objections to

Plaintiff's Motion for Leave to Amend. Given the lack of objection from Defendants, as

well as the timeliness of Plaintiff's motion and the instruction that leave to amend should

be freely given when justice so requires, FED. R. CIV. P. 15(a)(2), the Court finds that none

of the reasons discussed in *Arreola* for denying a motion to amend are applicable. *See* 546

F.3d at 796. Therefore, the Court **GRANTS** Plaintiff's Motion for Leave to Amend (Doc. 35). *See also Foman*, 371 U.S. at 182.

However, the Court's analysis does not end there as the new claims raised in Plaintiff's Amended Complaint are also subject to review under 28 U.S.C. § 1915A.[4] Notably, Plaintiff's Amended Complaint seeks to modify Count 1 by including a claim against Curtis Cox, the "legal mail officer" who allegedly opened Plaintiff's mail, had it tested for synthetic cannabinoids, and then issued false disciplinary reports against Plaintiff (Doc. 35 at p. 20). Specifically, Plaintiff alleges that Defendant Cox violated his rights by filing false disciplinary reports against him for drug related offenses (Doc. 35 at p. 15). *See also Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984) ("Prisoners are entitled to be free from arbitrary actions of prison officials.").

As the Court previously explained, a "due process claim arises in the prison disciplinary hearing context when: (1) there was a protected interest at stake that necessitated due process protections; and (2) the disciplinary hearing was conducted in accordance with procedural due process requirements." (Doc. 12 at p. 6). For the reasons previously discussed, Plaintiff has adequately alleged a protected liberty interest based

---

[4] Pursuant to Section 1915A, any portion of the Amended Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). Here, the Court has not conducted another round of preliminary review as to Counts 2 and 3 of the Amended Complaint because those counts were already reviewed in the prior Merit Review Order (*see* Doc. 12). Furthermore, while Plaintiffs' Amended Complaint rewords large portions of his Complaint and includes additional factual allegations, the Court has carefully reviewed those changes and finds they do not impact the Court's prior findings as to Counts 2 and 3 (*compare* Doc. 1 *with* Doc. 35; *see also* Doc. 12). Similarly, while the Court has reviewed the proposed amendment to Count 1 regarding Defendant Curtis Cox, the Court has not conducted another round of merit review of the claim raised against Defendants Foutch, Schoenbeck, Jones, and Wills in Count 1 because that claim was already reviewed and deemed adequate in the Court's Merit Review Order (*see* Doc. 12).

upon the timing and length of his segregation sentence, the additional detriment he suffered as a result of that discipline, and the revocation of good conduct credit (*Id.* at pp. 6-7).[5] Moreover, Plaintiff's Amended Complaint sufficiently alleges that he was not provided with due process protections when he was issued the disciplinary tickets *and* at the subsequent disciplinary hearings.[6] Thus, at this time, Plaintiff's Amended Complaint states a viable due process claim against Defendant Cox.

For simplicity's sake, Plaintiff's proposed claim against Defendant Cox will be included in Count 3 of Plaintiff's Amended Complaint, as opposed to Count 1, because Plaintiff's claim against Defendant Cox relates to the due process claim against Defendants Schoenbeck, Jones, and Wills in Count 3 (*see* Doc. 12 at p. 5). Therefore, while Plaintiff is granted leave to amend his Complaint to raise this due process claim against Defendant Cox, the Court designates this claim as part of Count 3 of Plaintiff's Amended Complaint. *See infra pp. 11-12.*

---

[5] However, as was explained in the Court's Merit Review Order, if Plaintiff's disciplinary conviction has not been invalidated, his due process claims in Counts 1, 2, and 3 may be barred by *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994) (*see* Doc. 12 at p. 7).

[6] Plaintiff has challenged the due process related to both the issuance of the disciplinary tickets and of their accompanying disciplinary hearings. This is significant because Plaintiff's claim against Defendant Cox, the ticketing officer, would have been inadequate if Plaintiff was not also challenging the due process he was afforded at the resulting disciplinary hearings. *See Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd,* 70 F.3d 117 (7th Cir. 1995) ("Furthermore, allegations of false disciplinary reports do not state a claim where due process is afforded. … A hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report."); *Sanders v. Hutchings*, 24-CV-1577-RJD, 2024 WL 3673163, at *2 (S.D. Ill. Aug. 6, 2024) ("Here, Sanders fails to allege that he was denied any procedural due process safeguards during his disciplinary hearing. Thus, any claim that the disciplinary ticket was false is DISMISSED without prejudice."). Here, however, because Plaintiff has also "alleged that he was denied due process protections [at the disciplinary hearings], his claim against [the ticketing officer] cannot be dismissed at this time." *See Lomeli v. Wills*, 23-CV-2518-MAB, 2024 WL 1254577, at *4 (S.D. Ill. Mar. 25, 2024) (allowing the plaintiff's due process claim to proceed against the ticketing officer because the plaintiff also raised a due process claim challenging the disciplinary hearings).

Next, the Court turns to Count 4 of Plaintiff's Amended Complaint (*see* Doc. 12 at pp. 7-9). Specifically, Count 4 seeks to bring the same conditions of confinement claim that was previously found to be insufficient in the Court's Merit Review Order (*compare Id. with* Doc. 35 at pp. 10-11). The Court believes that Count 4 of the Amended Complaint now cures the deficiencies contained in the original Complaint (*see* Doc. 12 at pp. 8-9) because it raises this claim against Defendants John Doe Correctional Officer and Correctional Officer Garcia. And meaningfully, Plaintiff's Amended Complaint alleges that those two officers were aware of the cell's conditions and Plaintiff's lack of any property and cleaning supplies but provided no assistance (Doc. 35 at p. 10). Therefore, by amending Count 4 to include additional factual allegations and to name Correctional Officers John Doe and Garcia, Plaintiff has now stated a viable claim in Count 4 that may proceed against those Defendants.

In Count 5 of his Amended Complaint, Plaintiff seeks to bring a claim that Defendants Foutch, Allsup, and Wills retaliated against him because he engaged in the protected activity of filing grievances (Doc. 35 at p. 9).[7] More precisely, Plaintiff alleges that in retaliation for filing grievances that exposed the fraudulent drug charges, Defendants Foutch, Allsup and Wills retaliated against him by: (1) leaving him in segregation for an additional four days after Grievance Officer Baker found that his disciplinary tickets should be expunged; (2) refusing to expunge the disciplinary

---

[7] Plaintiff's original Complaint attempted to raise a Fourteenth Amendment access to the courts claim in Count 5 (*see* Doc. 12 at p. 9). In contrast, the claim now raised in Count 5 of the Amended Complaint is a First Amendment retaliation claim (Doc. 35 at p. 9). Therefore, the Court's prior analysis of the original Complaint's Count 5 provides no insight into the merits of Count 5 of Plaintiff's Amended Complaint.

convictions from Plaintiff's record and to lower his aggression level; and (3) ignoring

and/or sabotaging his other efforts to exhaust his administrative remedies (Doc. 35 at pp.

7-9).

To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity

protected by the First Amendment; (2) he suffered a deprivation likely to deter such

activity; and (3) the First Amendment activity was at least a motivating factor in the

decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

"A complaint states a claim for retaliation when it sets forth a chronology of events from

which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th

Cir. 2000). Here, Plaintiff's allegations adequately plead each element of a retaliation

claim and are therefore sufficient for him to proceed with that retaliation claim against

Defendants Foutch, Allsup, and Wills. Consequently, Plaintiff is permitted to amend his

Complaint to raise this First Amendment retaliation claim against Defendants Foutch,

Allsup, and Wills in Count 5.

In summary, Plaintiff will be allowed to amend his Complaint to add Correctional

Officer John Doe and Correctional Officer Garcia as Defendants, and to proceed upon the

amended claims in Counts 3, 4 and 5. Accordingly, this case will proceed on the following

claims:

> Count 1:    Sarah Foutch, Joshua Schoenbeck, Anthony Jones, and
> Anthony Wills refused to expunge Plaintiff's disciplinary
> tickets even after receiving Yvette Baker's report indicating
> that both tickets should be expunged based on negative drug
> test results, in violation of Plaintiff's rights under the Eighth
> or Fourteenth Amendment.

Count 2:    Krista Allsup and Anthony Wills failed to correct Plaintiff's
aggression level, cellhouse placement, and classification, even
after receiving Yvette Baker's report indicating that both
tickets should be expunged based on negative drug test
results, in violation of Plaintiff's rights under the Eighth or
Fourteenth Amendment.

Count 3:    <u>Curtis Cox violated Plaintiff's rights by filing false
disciplinary reports against Plaintiff for drug related offenses;</u>
and Joshua Schoenbeck, Anthony Jones, and Anthony Wills
deprived Plaintiff of a protected liberty interest without due
process of law when they relied on a Sirchie NARK II test,
known to produce false positives, when finding Plaintiff
guilty of drugs and punishing him with one month of revoked
good conduct credit and six months of segregation, no contact
visits, and no commissary, in violation of his rights under the
Fourteenth Amendment.

Count 4:    <u>John Doe Correctional Officer and Correctional Officer Garcia</u>
subjected Plaintiff to unconstitutional conditions of
confinement in segregation, in violation of the Eighth
Amendment.

Count 5:    <u>Anthony Wills, Sarah Foutch, and Krista Allsup left Plaintiff
in segregation, refused to expunge his disciplinary
conviction, and sabotaged his attempts to exhaust his
administrative remedies in retaliation for Plaintiff engaging
in constitutionally protected activities.</u>

(*compare with* Doc. 12 at p. 5) (the Court has underlined the amendments which differ

from the claims contained in the Court's Merit Review Order).

3.  *Defendants' Motion for Summary Judgment on the Issue of Exhaustion (Doc. 38)*

Defendants filed a Motion for Summary Judgment on the Issue of Exhaustion,

which argues that summary judgment should be granted in their favor because Plaintiff

failed to exhaust his administrative remedies prior to filing this lawsuit (Doc. 38).

However, in light of the Court's decision to grant Plaintiff's unopposed motion for leave

to file an Amended Complaint, which will include additional claims and Defendants, the Court DENIES as MOOT Defendants' Motion for Summary Judgment on the Issue of Exhaustion (Doc. 38). Pertinently, this denial is without prejudice, meaning each Defendant will be permitted to file a renewed Motion for Summary Judgment on the Issue of Exhaustion after that Defendant has answered Plaintiff's Amended Complaint (and raised the failure to exhaust administrative remedies as an affirmative defense within their answer). *See* SDIL Local Rule 15.1(b) ("Unless otherwise ordered by the Court, whenever an amended pleading is filed, any motion attacking the original pleading will be deemed moot.").

4.  *Supplemental Filings, New Defendants, and Next Steps in this Action*

As discussed above, Plaintiff's Amended Complaint was attached to his motion in the incorrect page order (*see* Doc. 35 at pp. 3-26). As such, Plaintiff is **ORDERED** to re-file his Amended Complaint as a standalone document, in the correct page order, **on or before October 3, 2025**. Additionally, because the Amended Complaint attached to Plaintiff's Motion did not include the exhibits attached to Plaintiff's original Complaint (*see* Doc. 1 at pp. 28-62), Plaintiff is also INSTRUCTED to attach those exhibits to his Amended Complaint when re-filing his Amended Complaint.

Additionally, the Clerk of Court is **DIRECTED** to prepare the following for Defendants **Correctional Officer Garcia** and **Curtis Cox**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons), and to mail these forms, along with a copy of this Order and the Amended

Complaint, to Defendants Garcia and Cox in accordance with the service procedures outlined in the Court's original Merit Review Order (Doc. 12 at pp. 10-11).

After Plaintiff has re-filed his Amended Complaint, all Defendants shall timely file an appropriate responsive pleading to the Amended Complaint and, pursuant to 42 U.S.C. § 1997e(g), shall not waive filing a reply. Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in the original Merit Review Order (Doc. 12) and in this Order's Merit Review.[8] **In doing so, Defendants should rely upon the count designations provided in this Order.**

Finally, because Plaintiff's Amended Complaint is allowed to proceed against John Doe Correctional Officer, he must now work to identify that individual. As far as the Court can discern, Plaintiff has provided the following information which could be used to help identify the John Doe Correctional Officer: he is seeking to identify a male correctional officer assigned to Plaintiff's segregation unit from November 4, 2021, to November 13, 2021, who worked on first shift, and disregarded Plaintiff's concerns about the cell's condition.

While that information may prove sufficient to lead to the John Doe Correctional Officer's identification, the Court believes it prudent to proceed under the assumption that more identification information will be required. Accordingly, the Court imposes the following identification schedule for Defendant John Doe Correctional Officer:

---

[8] Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face.").

1) Plaintiff shall have until **October 3, 2025,** to file a Notice with the Court, and to the Warden of Menard (Defendant Anthony Wills), with any additional information he possesses which may help identify the John Doe Defendant including: physical description(s), rank, partial name(s)/nickname(s), specific job assignment(s), and any specific dates/times where Plaintiff interacted with the John Doe Defendant.

2) Thereafter, Defendant Wills, as the Warden at Menard, shall have until **October 17, 2025**, to file a Notice with the Court, and provide to Plaintiff, the identity of the John Doe Correctional Officer. Or, if the Warden is unable to identify the John Doe Correctional Officer, the Warden shall provide to Plaintiff any document or information which may assist in the identification of the John Doe.

3) Plaintiff shall have until **October 31, 2025**, to file a motion to substitute a specific Defendant for the John Doe Correctional Officer, or, if the John Doe remains unidentified, to file a motion specifying additional steps that can be taken to identify the John Doe Correctional Officer named in Count 4.

Plaintiff is **WARNED** that his failure to comply with this Order and to identify the John Doe Defendant **will result in the dismissal of the John Doe Defendant**.

### CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Leave to Amend is **GRANTED** (Doc. 35) and Defendants' Motion for Summary Judgment on the Issue of Exhaustion is **DENIED as MOOT** (Doc. 38). This matter will proceed on Counts 1 through 5 as designated above on pages 11-12. In addition, John Doe Correctional Officer, Correctional Officer Garcia, and Curtis Cox are added as Defendants.

Plaintiff is **DIRECTED** to re-file his Amended Complaint, in the correct page order, on or before **October 3, 2025**. In doing so, Plaintiff should also re-attach the exhibits contained within his Original Complaint (Doc. 1 at pp. 28-62) to his Amended Complaint. Additionally, Plaintiff is **DIRECTED** to comply with the John Doe identification schedule provided above.

The Clerk of Court is **DIRECTED** to prepare the following for Defendants **Correctional Officer Garcia** and **Curtis Cox**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons), and to mail these forms, along with a copy of this Order and the Amended Complaint, to Defendants Garcia and Cox in accordance with the service procedures outlined in the Court's original Merit Review Order (Doc. 12 at pp. 10-11).

After Plaintiff has re-filed his Amended Complaint, all Defendants shall timely file an appropriate responsive pleading to the Amended Complaint and, pursuant to 42 U.S.C. § 1997e(g), shall not waive filing a reply. Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in the original Merit Review Order (Doc. 12) and in this Order's merit review. **In doing so, Defendants should rely upon the count designations provided in this Order.**

Finally, Plaintiff is once again reminded of his continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result

in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

   **IT IS SO ORDERED.**

   **DATED: September 5, 2025**

                                        s/ Mark A. Beatty
                                        **MARK A. BEATTY**
                                        **United States Magistrate Judge**